IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
CA No.: 1:24-cv-1008

| | |
|---|---|
| RASHEED CARRASQUILLO, on behalf of himself and all others similarly situated, <br><br> *Plaintiff*, <br><br> v. <br><br> SECURITAS SECURITY SERVICES USA, INC., <br><br> *Defendant*. | ) <br> ) <br> ) <br> ) <br> ) <br> ) **COLLECTIVE/CLASS ACTION** <br> ) **COMPLAINT** <br> ) <br> ) <br> ) <br> ) <br> ) |

COMES NOW, Rasheed Carrasquillo ("Plaintiff"), on behalf of himself and all others similarly situated, (collectively "Plaintiffs") by and through undersigned counsel, and hereby sets forth this collective action for violation of the Fair Labor Standards Act under § 216(b), and a representative action under the North Carolina Wage and Hour Act pursuant to Fed. R. Civ. P. 23, and alleges and follows:

## PRELIMINARY STATEMENT

1.    Named Plaintiff, on behalf of himself and all others similarly situated, brings this action against Defendant Securitas Security Services USA, Inc., ("Defendant Securitas" or "Securitas") under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq*. and the North Carolina Wage and Hour Act ("NCWHA"), N.C. Gen. Stat. § 95-25.1 *et. seq*., for not fully compensating employees who have or have worked at Defendant Securitas.

2.    Plaintiffs consist of current and former employees working as non-exempt

hourly paid security guards and/or site supervisors.

3.    With respect to Securitas's obligation to comply with its statutory obligation pursuant to the FLSA, Defendant Securitas is aware of Plaintiffs working generally in excess of forty (40) hours per week as Defendant Securitas has suffered or permitted, and in fact required, Plaintiffs to work in excess of forty (40) hours per week on a regular basis without being properly compensated time and one-half (1.5) for hours over 40 per week.

4.    Plaintiff was an employee of Defendant for approximately nine (9) months. During his employment, Plaintiff worked for Defendant Securitas as a site supervisor but was not properly compensated for all hours worked through the date of his constructive discharge in or about March 2024. During Plaintiff's employment, Defendant Securitas willfully failed and refused to compensate Plaintiff all wages, including for all hours worked, and modified records to avoid compensating Plaintiff for all hours worked in excess of forty (40) in a week at a rate of one-and-one-half-times his regular rate, due and owing to Plaintiff, in direct violation of the FLSA, 29 U.S.C. § 201 *et seq*.

5.    Plaintiff also brings this action against Defendant for failing to pay Plaintiff all earned and accrued wages, including, but not limited to, promised straight-time compensation, the promised premium compensation for hours in excess of forty (40) per week, in direct contravention of the North Carolina Wage and Hour Act ("NCWHA"), N.C. Gen. Stat. § 95-25.1, *et seq*.

6.    Defendant's pay practices and policies were in direct violation of the FLSA. Accordingly, Plaintiff seeks any unpaid overtime compensation, liquidated damages, post-judgment interest, and attorneys' fees and costs.

7.     Plaintiff Carrasquillo brings this action on his own behalf and, pursuant to 29 U.S.C § 216(b), as a representative of a proposed collective action of similarly situated employees:

> All individuals who were, are, or will be employed by Defendant Securitas as hourly non-exempt employees who were not compensated for all of their hours worked, including, but not limited to, above forty (40) per week any time within three years prior to the commencement of this action, through the present.

8.     Defendant Securitas is liable for its failure to pay Plaintiffs for all work performed, and at the appropriate overtime rate for hours worked in excess of forty (40) per week.

9.     Plaintiffs who elect to participate in this FLSA collective action seek compensation for all statutory overtime wages, an equal amount of liquidated damages, post judgment interest, and attorneys' fees and costs, pursuant to 29 U.S.C. § 216(b).

10.     Plaintiff also brings this action, on his own behalf, and as a representative of similarly situated current, former or future hourly non-exempt security guards or site supervisors employed by Defendant Securitas in North Carolina, under the NCWHA.

11.     With respect to Plaintiff's NCWHA claims, despite notifying Plaintiffs of their non-exempt hourly status, promised overtime eligibility, hourly rates, promised bonuses, shift differentials, and Defendant Securitas's commitment to compensate employees for all hours worked, including both for hours less than and in excess of forty (40) hours per week through an employee handbook and/or earning statements, Plaintiff and others similarly situated were not always paid consistent with Securitas's written policies and practices in violation of N.C. Gen. Stat. § 95-25.6.

3

12. Specifically, despite Securitas's written policies and practices and as communicated to Plaintiffs, Plaintiffs were not compensated for all of their hours worked, (including time spent working off the clock), promised straight time for hours less than 40 per week, promised holidays, promised vacation, promised premium rates for hours worked over 40 per week, and/or incorporated bonus earnings and/or shift differentials in determining the appropriate premium rate(s) in connection with hours worked in excess of forty (40) hours per week, in violation of Securitas's written policies as required by the NCWHA. Therefore, such uncompensated wages were earned, accrued, and remain unpaid in violation of N.C. Gen. Stat. § 95-25.6. These claims are separate and distinct from the FLSA.

13. Plaintiff, who is a North Carolina resident and who worked for Defendant Securitas in North Carolina, asserts that he and the putative class, who works or worked in North Carolina for Defendant Securitas, are entitled to compensation relating to promised but unpaid bonuses, vacation days, holidays, shift differentials, and for all work performed for Defendant Securitas, whether the workweek totaled greater or fewer than forty (40) hours, compensation at the appropriate regular or promised rate for hours worked less than 40 per week, and/or the promised and/or appropriate premium rate for all hours worked in excess of forty (40) per week, especially during workweeks when bonuses and/or shift differentials applied but were not included as part of the regular earnings for determining the appropriate premium rate(s) and/or bonuses that were promised but were unpaid, and for an equal amount of liquidated damages, prejudgment interest, and attorneys' fees and costs, pursuant to N.C. Gen. Stat. §§ 95-25.13, 95-25.6, 95-25.22(a), (a1), and (d). These

promises are not enforceable under the FLSA, and thus the NCWHA is more stringent and provides greater protections to North Carolinians than the FLSA.

14.     Plaintiff seeks class certification under Rule 23 of the Federal Rules of Civil Procedure for the following class of Defendant Securitas's employees in North Carolina:

> All individuals who were, are, or will be employed by Defendant Securitas as hourly non-exempt employees who were not compensated all promised, earned, and accrued wages due to Defendant Securitas's policies, including, but not limited to, compensation relating to promised but unpaid bonuses, vacation days, holidays, shift differentials, and for all of their hours worked up to forty (40) in a week and for hours worked above forty (40) in a week within two years prior to the commencement of this action, through the present.

15.     This action is also brought by Plaintiff to remedy Defendant's unlawful acts under Section 15(a)(3) of the FLSA  for retaliating against Plaintiff following Plaintiff's complaints on behalf of himself and the employees under his immediate supervision regarding: (1) employees not receiving all of their earned, accrued, and promised wages; (2) Plaintiff's District Manager, Anthony Trevino ("DM Trevino"), either directing Plaintiff to adjust time records of officers or adjusting the records himself; (3) DM Trevino forcing Plaintiff to work on Sundays and Wednesday evenings in conflict with his time for worship and for which he specifically requested accommodation for; and (4) Plaintiff being pressured into constructive discharge following Plaintiff's multiple wage and hour complaints to Human Resources (HR), at which time his complaints were redirected to DM Trevino.

16.     Accordingly, Plaintiff seeks all available relief for these claims, including but not limited to back pay, front pay, liquidated and/or treble damages, past pecuniary

5

losses, prejudgment interest, compensatory damages, punitive damages, attorneys' fees and costs, and all other relief permitted by applicable law.

## JURISDICTION AND VENUE

17.     The Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 for the claims brought under the FLSA, 29 U.S.C. § 201, *et seq*.

18.     The United States District Court for the Middle District of North Carolina has personal jurisdiction because Defendant conducts business throughout North Carolina, including, but not limited to, Durham County, Wake County, New Hanover County, Guilford County, Buncombe County, and Mecklenburg County. Durham County and Guilford County are located within this district.

19.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and 1391(c), because at all relevant times, Defendant conducted business within the Middle District of North Carolina, and all or part of the events or omissions giving rise to these claims occurred in this District.

20.     The claims for violations of the NCWHA are based upon the statutory law of the State of North Carolina.

21.     Supplemental jurisdiction exists pursuant to 28 U.S.C. § 1367 for the pendent state claims because they arise out of the same nucleus of operative facts as the FLSA claims.

22.     All of the alleged causes of action can be determined in this judicial proceeding and will provide judicial economy, fairness, and convenience for the parties.

23.     The evidence establishing liability for all causes of action will be similar, and

neither issue will predominate nor create confusion for a jury.

## PARTIES

24.     Plaintiff is an adult resident of Johnston County, North Carolina. He worked for Defendant as an hourly-paid, nonexempt employee from approximately June 2023 until his constructive discharge on or about March 28, 2024.

25.     Upon information and belief, Defendant Securitas Security Services USA, Inc. is a foreign business corporation providing on-site, remote, and mobile security services to clients that is organized under Delaware law and is authorized to do business in the State of North Carolina. Defendant may be served with process through their registered agent, National Registered Agents, Inc. at 160 Mine Lake Court, Suite 200, Raleigh, NC 27615-6417.

## COVERAGE

26.     At all relevant times, Defendant has acted, directly or indirectly, in the interest of an employer with respect to Named, opt-in, and putative Plaintiffs.

27.     At all relevant times, Defendant maintained control, oversight, and direction over Plaintiff and similarly situated employees, including hiring, firing, disciplining, timekeeping, payroll, and other employment practices.

28.     At all relevant times, Defendant was an employer within the meaning of the FLSA, 29 U.S.C. § 203(d), and the NCWHA, N.C. Gen. Stat. § 95-25.2(5).

29.     At all relevant times, Plaintiff was an employee within the scope of the FLSA, 29 U.S.C. §§ 206 and 207.

30.     At all relevant times, Defendant was an enterprise engaged in related

activities performed through a unified operation or common control for a common business purpose, as defined by the FLSA, 29 U.S.C. § 203(r).

31.     Upon information and belief, Defendant is an enterprise engaged in commerce or in the production of goods for commerce as defined by the FLSA, 29 U.S.C. §§ 203(a), 203(s). Defendant is engaged in commerce or in the production of goods for commerce, because, *inter alia*, it has employees that handle goods and materials that have been produced for and moved in commerce, and, upon information and belief, its annual gross volume of business is at least $500,000.00. These goods and materials that have been produced for and moved in commerce, which its employees have handled.

## WAGE-RELATED FACTUAL ALLEGATIONS COMMON TO THE FLSA & NCWHA

32.     Defendant is in the business of providing on-site, remote, and mobile security services to its clients globally and nationally, including within the State of North Carolina.

33.     Upon information and belief, Defendant maintains office locations across North Carolina in Raleigh, Wilmington, Greensboro, Asheville, and Charlotte in addition to its "mobile" locations. Upon information and belief, Defendant also operates and maintains a guard shack to provide security services for a transport facility located at 3500 Tricenter Blvd., Durham, NC 27713.

34.     Upon information and belief, Defendant has a contract with Kellanova, formerly Kellogg's, a non-party engaged in the business of processing and selling food products, to provide security and guarding services. The Kellanova Client Site is located at 1 Quality Lane, Cary, NC 27513.

8

35. Upon information and belief, Defendant Securitas has approximately ninety thousand (90,000) employees who engage in security services.

**Hiring:**

36. Plaintiff first began his employment with Defendant in approximately June 2023 as a site supervisor for the Kellanova client site. Eventually, Plaintiff was directed to supervise and provide security services for an additional warehouse near the Kellanova client site and for Kellanova's satellite location in Durham, NC, as well.

**Pay:**

37. Plaintiff was hired as a full-time, non-exempt employee at an hourly rate of $20.85 on a weekly pay schedule and began employment in approximately June 2023.

38. In December 2023, Plaintiff received a raise of his hourly rate to $21.68.

**Job Duties:**

39. Plaintiff's duties as a site supervisor included but were not limited to: supervising security officers; staff scheduling; ensuring proper employee coverage for the site; providing counseling to officers; training new hires; writing reports; submitting site payroll records; monitoring security cameras; patrolling the site, including parking lots and surrounding areas; responding to alarms; performing access control of visiting vehicles; monitoring activity at the receiving gate; processing scheduling updates from visiting vehicles; site audits; conducting officer performance evaluations; ensuring officers were properly licensed, certified for the appropriate security clearances, and up-to-date on all necessary paperwork to lawfully provide security services; setting up for special events;

9

providing additional security during security alerts; and responding to emergencies, including by providing assistance over the phone while off-duty.

40. During his employment with Defendant, Plaintiff supervised a team comprising full-time officers, part-time officers, and fill-in or "float" officers.

**Timekeeping:**

41. Upon information and belief, Plaintiff, and others similarly situated, utilized a timekeeping system requiring employees to call an automated system to record their hours. However, Plaintiff and those similarly situated were not able to properly record all of their hours worked.

42. Hours worked for each officer were also manually recorded in weekly schedules for each shift. However, the hours recorded on the weekly schedules for each officer were regularly adjusted by the district manager before they were submitted to the client.

**Work Schedule:**

43. Upon his hire, Plaintiff was typically scheduled to work Monday through Friday from 7:00am to 3:00pm. At some point during his employment, Plaintiff's scheduled hours were changed to Monday through Friday 5:00am to 2:00pm. However, Plaintiff was frequently required to work beyond his scheduled hours.

44. Approximately ten (10) times during his employment, Plaintiff was required to work weekend shifts from 7:00pm to 7:00am, from Friday night to Saturday morning and from Saturday night to Sunday morning.

10

## NCWHA WAGE-RELATED FACTUAL ALLEGATIONS

45.     According to the NCWHA "wage" includes bonuses and *other* amounts promised, including hours up to forty (40) each week (and in excess of forty (40) hours per week), when the employer has a policy or a practice of making such payments. NC Gen. Stat. § 95-25.2(16), irrespective of any FLSA statutory obligation Securitas has to pay overtime for hours over 40 per week, since such statutory obligation does not include unpaid earned and accrued wages and is not recoverable under the FLSA.

46.     Defendant's failure to compensate Plaintiffs for all properly recorded or unrecorded hours worked, including, but not limited to, all work performed from the time Plaintiffs clocked in through the time Plaintiffs clocked out, in addition to pre and post-shift activities (on or off the clock), work performed during lunch breaks, up to and in excess of forty (40) hours per week, unpaid holidays, vacation, shift differentials, and bonuses, has resulted in a  failure to pay employees all promised, earned, and accrued wages.

47.     Defendant Securitas's failure affected Named, Opt-in, and all putative Plaintiffs similarly.  Additionally, Plaintiff Carrasquillo and others similarly situated were promised premium pay for all hours worked at time-and-one-half consistent with written policies as laid out in their handbook (irrespective of Securitas's statutory overtime obligation under the FLSA).

**Pre-Shift Work**:

48.     In addition to working his regularly scheduled hours as described *supra* ¶ 42,

Plaintiff necessarily engaged in one (1) hour to one-and-a-half (1.5) hours of pre-shift activities before his scheduled start time per regularly scheduled shift.

49.     Plaintiff's pre-shift activities included supervising transitions between shifts, checking emails, responding to Kellanova's representatives, communicating with officers, ensuring staff members took their assigned positions at the site, filling in for vacant posts if necessary, and getting prepared for the day's shift. These pre-shift tasks were necessary for the completion of Plaintiff's principal job duties as site supervisor in providing on-site security for the client, performing access control of visiting vehicles, supervising security officers at the client site, and managing security officers' schedules relative to the site's needs each day.

**Post-Shift Work:**

50.     In addition to his regularly scheduled hours as described *supra* ¶ 42, Plaintiff necessarily engaged in approximately one (1) to two (2) hours of on-site post-shift activities after his scheduled end time per regularly scheduled shift.

51.     Plaintiff's on-site post-shift activities included but were not limited to: writing and submitting site payroll reports; creating and coordinating advance schedules for each week; conducting officer performance evaluations; and personally filling in vacancies as necessary. The payroll reports needed to be completed and submitted *daily* to account for rotating flex officers. Plaintiff was also required to produce *advance* schedules for the following week so that the client could anticipate expected coverage. Furthermore, Plaintiff had to conduct officer performance evaluations, which could not always be

12

completed within Plaintiff's scheduled shift due to the demands on the officers to provide adequate security for the client. Additionally, Plaintiff occasionally needed to fill in vacant posts after the end of his scheduled shift for the next shift in the event of callouts. These post-shift tasks were necessary for Plaintiff's principal duties as site supervisor in managing security officers' schedules and timely submitting the site payroll records.

52. In addition to the hours of work required on-site before and after Plaintiff's scheduled shift times, Plaintiff was also required to perform work approximately two (2) to three (3) hours *daily* while off-the-clock, off-duty, and off-site. Plaintiff's off-site activities included but were not limited to: receiving calls from his district manager to discuss various work-related matters; meeting with the client to discuss needs and expectations for each week; responding to on-site emergencies, either remotely or in person; receiving officer callouts; readjusting schedules and coordinating with other officers; and occasionally filling in personally for vacancies or to provide additional coverage as necessary. These off-site tasks were necessary for Plaintiff's principal duties as site supervisor in providing adequate 24/7 security services for the client at three (3) separate physical locations.

53. Plaintiff's pre-shift, post-shift, and off-site work activities needed to be conducted outside regular hours because Plaintiff was given no time to complete this work during his scheduled shift or, in the case of his off-duty tasks, needed to be completed immediately as the need arose. Plaintiff's pre-, post-shift and off-site work activities were known by Plaintiff's supervisors at all relevant times. Therefore, Plaintiff worked approximately four (4) to six-and-a-half (6.5) hours of unpaid pre-/post-shift and off-site

13

work activities each day he was regularly scheduled to work. Additionally, Plaintiff worked approximately four (4) to six (6) hours off-site on days in which he otherwise was not scheduled to work. In an average week, and assuming an eight (8) hour scheduled shift, Plaintiff worked a total of sixty-four (64) to over seventy-eight (78.5) hours every week. However, Plaintiff was not compensated for all hours worked at the appropriate rate, whether the promised straight-time rate for hours under forty (40) per week or appropriate overtime premium rate for hours in excess of forty (40) per week.

54.     In light of the numerous compensation policies and practices Defendant Securitas did not comply with in violation of the NCWHA, N.C. Gen. Stat. § 95-25.6. Plaintiff estimates that for just him alone, he is due approximately $216.80 per week for unpaid straight-time for an estimated $11,273.60 for only one year period preceding the filing of the complaint. Additionally, these estimated damages under the NCWHA do not include prejudgment interest at 8% and *mandatory* liquidated damages (not recoverable under the FLSA).

**Promised Monthly Hours Bonus:**

55.     Defendant promised to pay Plaintiffs various bonuses subject to negotiated agreements between Defendant and its client sites. Despite such promises, Plaintiff was not paid accordingly.

14

## FLSA WAGE-RELATED FACTUAL ALLEGATIONS

**Unpaid Overtime Hours:**

56.     In consideration of all hours worked, whether recorded or unrecorded and including pre-/post-shift and off-site compensable activities, Plaintiff engaged in approximately twenty-four (24) to over thirty-eight (38.5) hours in excess of forty (40) per week.

57.     Each hour of compensable work activities performed in the completion of Plaintiff's primary duties in excess of forty (40) hours per week entitled Plaintiff to an overtime premium rate of one-and-one-half times his appropriate hourly rate.

## RETALIATION AND CONSTRUCTIVE DISCHARGE ALLEGATIONS

58.     Plaintiff repeatedly raised wage and hour concerns on behalf of himself and the officers under his supervision with Defendant's district manager, Anthony Trevino and with Defendant's Human Resources ("HR") department.

59.     Plaintiff's concerns were initially addressed with DM Trevino via email on July 16, 2023. Plaintiff informed DM Trevino of his officers' concerns regarding short-staffing and their need to work excessive overtime hours, as well as, not receiving lunch breaks. Furthermore, Plaintiff requested a copy of his job description and what his responsibilities were concerning Kellanova's satellite site in Durham, as it had not been previously discussed during his onboarding that he would be required to provide on-site security.

60.     On August 5, 2023, Plaintiff emailed DM Trevino again to address his

responsibilities for the satellite site, not being compensated for any work-related calls performed outside of his normal schedule since Plaintiff was not classified as a salaried employee, and his request to not be scheduled on Sundays due to his religious observances.

61.     Instead of DM Trevino addressing Plaintiff's concerns, DM Trevino began retaliating against Plaintiff by undermining his authority with his officers, changing officers' scheduling without Plaintiff's knowledge causing the client's sites to be understaffed, and additionally verbally harassing Plaintiff and threatening his employment. Plaintiff addressed his concerns regarding DM Trevino to Kellanova's representatives, Mark Logue and Matthew Carver, via email.

62.     Plaintiff's wage and hour concerns, as well as his concerns about retaliatory treatment by DM Trevino, continued into the following year when he called Defendant's HR Department and detailed these concerns again over the phone to Human Resources Manager ("HRM") Stacey Peace. Plaintiff followed up on his phone conversation with HRM Peace with a detailed email sent January 10, 2024, to HRM Colette Evans, describing DM Trevino's "[h]ostile and aggressive demeanor," "loud tone of voice when addressing me on concerns that I bring to his attention," "[a]busive and offensive language." In the email, Plaintiff also explained how he felt DM Trevino was "[r]etaliating against me for being honest with the client about the schedule being short staffed," "[e]xcluding me from meetings with the client and withholding [pertinent] information from me," "[c]onstantly threatening to fire me whenever I bring something to his attention," and "[d]iscriminating against my religious beliefs as a Christian forcing me to work on days I serve and worship at my church due to him neglecting to hire additional officers to fully accommodate the

16

schedule." Plaintiff anticipated at the time that DM Trevino's abusive behavior would continue or worsen as a result of his complaints to HR and create such a "hostile intolerable work environment" that he would be forced to resign. Plaintiff sent another email to HRM Peace on January 14, 2024, explaining further difficulties he was having with DM Trevino and that Plaintiff had been forced to work for a second Sunday in a row, interfering with his rights to attend church for worship.

63. Plaintiff also further informed HRM Peace that he had not been paid for all hours worked on his previous two paychecks, and that Plaintiff had not been paid the appropriate overtime rate of time-and-a-half for hours worked over forty (40). Instead, DM Trevino had seemingly set his overtime rate at $10.00 per hour. On February 7, 2024, HRM Evans responded to me by reminding me of the chain of command and telling me to continue addressing my concerns about the site first with DM Trevino. She also informed me that the payroll department found no discrepancies in my earnings in one specific week based on the fact that the earnings seemed calculated correctly based on the hours recorded.

64. Plaintiff responded on February 8, 2024, by reminding HR of the various issues that were still left unaddressed, including payroll errors for officers who were not being paid in full for all hours worked at the appropriate rates, including the appropriate overtime rate, and that hours were missing from the weekly earnings statements. Additionally, Plaintiff also repeated that the officers under his supervision were experiencing burnout from overwork due to the lack of coverage and that Plaintiff, as Site Supervisor, could not cover multiple posts at the same time. Furthermore, Plaintiff also repeated that his concerns of retaliation by DM Trevino for submitting grievance reports to

17

the HR department, for which Plaintiff still had no specific guarantee of protection beyond being told by HRM Peace that his concerns "were escalated."

65. On March 27, 2024, Plaintiff requested paid time off to recover from the stress and anxiety caused by DM Trevino's treatment of him.

66. Upon learning that Plaintiff was not yet eligible for paid leave, and considering the stressful conditions DM Trevino had created through his retaliatory conduct, Plaintiff submitted his constructive discharge letter notifying Defendant that he had no other alternative but to resign due to the ongoing retaliatory hostile work environment, bullying and harassment in the workplace, intentional sabotaging of operations, delayed coverage for posts or no coverage at all, and the many unpaid hours of work performed both on site and off-the-clock at home when taking work related calls and revising the schedules.

67. On April 23, 2024, Plaintiff received a final termination letter recording his final day as April 17, 2024.

## FLSA COLLECTIVE ACTION ALLEGATIONS

68. Named Plaintiff brings the First Count of the instant Complaint as a collective action pursuant to 29 U.S.C. § 216(b), on behalf of himself and all similarly situated employees.

69. Similarly situated employees, for purposes of the FLSA collective action claims, include individuals who were, are, or will be employed by Defendant Securitas as security non-exempt hourly employees, at any time within the three (3) year period prior to the date of the commencement of this action, through the present, and who did not

receive overtime for hours worked in excess of 40 hours per week.

70. The members of the proposed collective action, like Named Plaintiff, are employed as security employees, have substantially similar job requirements and pay provisions, and are subject to common practices, policies, or plans that fail to compensate them for hours worked in excess of 40 per week at a rate of time and one half their hourly rate.

71. Upon information and belief, there are hundreds of putative Plaintiffs and or similarly situated current and former security employees that fall within the scope of the aforementioned FLSA class.

72. The members of the proposed collective action are known to Defendant Securitas, are readily identifiable, and may be located through Defendant's records.

73. Pursuit of this action collectively will provide the most efficient mechanism for adjudicating the claims of Named and putative Plaintiffs.

74. Members of the proposed FLSA class, therefore, should be permitted to pursue their claims collectively, pursuant to 29 U.S.C. § 216(b).

75. Pursuant to 29 U.S.C. § 216(b), attached to and filed with the original Complaint as Exhibit 1, is the Consent to File Suit as Plaintiff executed by Named Plaintiff. As this case proceeds, it is likely other individuals will file consent forms and join as opt-in plaintiffs.

76. Named Plaintiff requests that he be permitted to serve as representative of those who consent to participate in this action and that this action be conditionally certified as a collective action pursuant to 29 U.S.C. § 216(b).

19

## NCWHA CLASS ACTION ALLEGATIONS
## PURSUANT TO RULE 23 OF THE FEDERAL RULES OF CIVIL PROCEDURE

77.     Named Plaintiff brings the Second Cause of Action of the instant Complaint as a class action pursuant to Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure, on behalf of himself and all similarly situated employees, for relief to redress and remedy Defendant's violations of the NCWHA, N.C. Gen. Stat. § 95-25.1, et seq.

78.     <u>Numerosity</u>:  The proposed class is so numerous that joinder of all such persons is impracticable, and the disposition of their claims as a class will benefit the parties and the Court.  While the exact number of class members is unknown to Plaintiff at this time, upon information and belief, the class comprises more than one hundred individuals.

79.     <u>Common Questions Predominate</u>: There is a well-defined commonality of interest in the questions of law and fact involving and affecting the proposed class, and these common questions of law and fact predominate over any questions affecting members of the proposed class individually, in that all putative class members have been harmed by Defendant Securitas's failure to lawfully compensate them.  The common questions of law and fact include, but are not limited to, the following:

        a.      Whether Defendant Securitas failed to compensate putative Class Members at the earned, accrued, and/or promised rate(s) for all hours worked less than forty per week and in excess of forty (40) each week pursuant to § 95-25.6 and consistent with Defendant's handbook as required pursuant to § 95-25.13; and

        b.      Whether Defendant Securitas failed to compensate putative NC Class Members for all of their earned, accrued, and/or promised wages, including, but not limited to, all of their hours

20

worked, straight time, bonuses, vacation, holidays, shift differentials, and/or overtime on their regular pay date, in violation of the NCWHA.

80. <u>Typicality</u>: The claims of Plaintiff are typical of the claims which could be alleged by any member of the putative class, and the relief sought is typical of the relief which would be sought by each member of the class in separate actions. All putative class members were subject to the same compensation practices of Defendant Securitas, as alleged herein, of failing to pay putative class members for all hours worked at the promised hourly rate(s). Defendant Securitas's compensation policies and practices affected all putative class members similarly, and Defendant Securitas benefited from the same type of unfair and/or unlawful acts as to each putative class member. Plaintiffs and members of the proposed class sustained similar losses, injuries, and damages arising from the same unlawful policies, practices, and procedures.

81. <u>Adequacy of Representation</u>: Named Plaintiff is able to fairly and adequately protect the interests of all members of the proposed class, and there are no known conflicts of interest between Named Plaintiff and members of the proposed class. Named Plaintiff has retained counsel who are experienced and competent in both wage and hour law and complex class action litigation.

82. <u>Superiority</u>: A class action is superior to other available means for the fair and efficient adjudication of this controversy. Individual joinder of all class members is impracticable. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently,

and without the unnecessary duplication of effort and expense that numerous individual actions engender. Because the losses, injuries and damages suffered by each of the individual class members may be small for some in the sense pertinent to the class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual class members to redress the wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a class action. The cost to the court system and the public for the adjudication of individual litigation and claims would be substantially greater than if the claims are treated as a class action. Prosecution of separate actions by individual members of the proposed class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the class, establishing incompatible standards of conduct for Defendant, and resulting in the impairment of class members' rights and the disposition of their interests through actions to which they are not parties. The issue in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can and is empowered to fashion methods to efficiently manage this action as a class action.

83. <u>Public Policy Considerations</u>: Defendant Securitas violated the NCWHA. Just as current employees are often afraid to assert their rights out of fear of direct or indirect retaliation, former employees may also be fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class action lawsuits provide class members who are not named in the Complaint a degree of anonymity, which allows for vindication of their rights while eliminating or reducing these risks.

84.     Pursuit of this action as a class will provide the most efficient mechanism for adjudicating the claims of Plaintiffs and members of the proposed class.

### FIRST CAUSE OF ACTION
**Violation of the Fair Labor Standards Act Brought by Plaintiff on Behalf of Himself and All Similarly Situated**
**29 U.S.C. § 201, *et seq*.**

85.     Plaintiff incorporates by reference all preceding paragraphs as if the same were set forth again fully at this point.

86.     At all relevant times, Defendant has been, and continues to be, an "employer" engaged in interstate "commerce" and/or in the production of "goods" for "commerce," within the meaning of the FLSA, 29 U.S.C. § 203.

87.     At all relevant times, and upon information and belief, Defendant has had a gross operating revenue in excess of $500,000.00.

88.     The FLSA defines "employee" as "any individual employed by an employer," 29 U.S.C. § 203(e)(1), and "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee," 29 U.S.C. § 203(d). The FLSA defines "employ" broadly to cover anyone who is "suffer[ed] or permit[ted] to work." 29 U.S.C. § 203(g).

89.     The FLSA, pursuant to §§ 206 and 207, requires each covered employer, including Defendant, to compensate all non-exempt employees at least minimum wage for all hours worked and at a rate of not less than one and one-half (1.5) times the regular rate of pay for work performed in excess of forty (40) hours in a single workweek.

90.     At all relevant times, Plaintiff was a non-exempt, covered employee pursuant

to the FLSA.

91.    Plaintiff typically worked greater than forty (40) hours per week.

92.    At all relevant times, Defendant, pursuant to their uniform policies and practices, willfully failed and refused to pay for all hours worked by Plaintiff, including hours exceeding forty (40) per week as well as pre-shift and post-shift compensable activities performed.

93.    Defendant willfully failed to pay Plaintiffs as required by the FLSA by engaging in a pattern or practice of permitting or requiring Plaintiff to perform activities integral and indispensable to his principal activities off-the-clock without compensation at the applicable minimum wage and overtime rate for all hours worked, including over forty (40) per week.

94.    The foregoing conduct, as alleged above, entitles Plaintiff to liquidated damages in an amount equal to the amount of unpaid wages under 29 U.S.C. § 216(b), since Defendant cannot show it acted in good faith, and a three (3) year, rather than two (2) year, statute of limitations, since Defendant's acts constitute willful violations of the FLSA within the meaning of 29 U.S.C. § 255(a).

95.    Named Plaintiff and Putative Plaintiffs each worked more than forty (40) hours in one or more workweeks within the applicable statutory period.

**COUNT TWO**
**Violation of the North Carolina Wage and Hour Act**
**N.C. Gen. Stat. § 95-25.1, *et seq*.**

96.    Plaintiff incorporates by reference all preceding paragraphs as if the same

were repeated here verbatim.

97.     At all relevant times, Defendant employed, and/or continues to employ, Plaintiff within the meaning of the NCWHA.

98.     The class period for this cause of action is at least two years from the date of the filing of the initial Complaint.

99.     At all relevant times, Defendant Securitas has employed, and/or continues to employ, putative Plaintiffs and Rule 23 class members within the meaning of the NCWHA.

100.     Pursuant to the NCWHA, N.C. Gen. Stat. § 95-25.6, it is unlawful for an employer to "suffer or permit" an employee to work without paying all owed, earned, and accrued promised wages, on the employee's regular payday.

101.     Additionally, North Carolina law requires every employer to notify employees of the promised wages and the day of payment as well as making available a written version of the employment practices and policies regarding promised wages. *See* N.C. Gen. Stat. § 95-25.13(1)-(2).

102.     Acceptable measures of providing employees information about promised wages include "an up-to-date employee handbook or other written statement of policies and practices with regard to promised wages" or through "payroll records, including check stubs, for wages promised in the form of hourly pay or salary or other form whose terms are readily identifiable from payroll records," and employers are required to pay such promised wages. Notification of Employment, 13 N.C.A.C. 12.0805 (2022).

103.     13 N.C. Admin. Code 12 § .0307(c) provides that any ambiguous policies and practices with respect to bonuses, commissions, and other forms of wage calculation

25

"shall be construed against the employer and in favor of employees."

104.    Pursuant to the NCWHA, N.C. Gen. Stat. §§ 95-25.13 and 95-25.6, Defendant was required to pay Plaintiff all wages, when due, for all promised earned and accrued regular, straight, and overtime wages of one and one-half times the promised wage rate, which is a part of all the employees' accrued and earned wages, and which should have been paid when due on the employees' regular payday; this requirement is not covered by the overtime provision under the FLSA.

105.    Invariably, ***"[o]nce a promise is made by an employer, that employer must pay all promised wages, including wage benefits, accruing to its employees based on any policy, agreement or practice that the employer has established***." *See* North Carolina Department of Labor, *Promised Wages Including Wage Benefits*, https://www.labor.nc.gov/workplace-rights/employee-rights-regarding-time-worked-and-wages-earned/promised-wages-including.

106.    Pursuant to the NCWHA, N.C. Gen. Stat. §§ 95-25.13 and 95-25.6, Defendant Securitas was required to pay Plaintiffs and putative class members all wages, when due, for all promised earned and accrued regular, straight, and overtime wages of one and one-half times the promised wage rate, which is a part of all the employees' accrued and earned wages, and which should have been paid when due on the employees' regular payday; this requirement is not covered by the overtime provision under the FLSA. Moreover, the FLSA's Savings Clause pursuant to § 218(a) provides that employers should comply with the more stringent between the FLSA and state wage and hour laws. Because the NCWHA provides for more stringent protections than the FLSA, the FLSA does not

26

preempt the NCWHA.

107. Every employer shall maintain complete and accurate records that document, in relevant part, the hours worked each workweek and all other records required to compute wages. 13 NCAC 12.0801.

108. Defendant Securitas was aware that Plaintiffs and putative Rule 23 class members were not receiving all straight-time wages for all hours worked up to forty (40) and promised premium wages for hours worked in excess of forty (40) per week pursuant to the promised straight-time rate and corresponding premium overtime rate.

109. Defendant Securitas employed Named and putative Plaintiffs within the State of North Carolina.

110. Consistent with the above, Defendant's failure to pay Plaintiffs all owed, earned, and promised wages was in violation of N.C. Gen. Stat. § 95-25.6.

111. As a result of Defendant's unlawful policies and practices, Plaintiffs have been deprived of compensation due and owing.

112. Defendant's failure to pay Plaintiffs all owed, earned, and promised wages, despite the fact that, upon information and belief, Defendant Securitas knew of its obligations under the law, entitles Plaintiffs to liquidated damages in an amount equal to the amount of unpaid wages, under N.C. Gen. Stat. § 95-25.22(a1).

113. Due to Defendant Securitas's unlawful acts, Plaintiffs have been deprived of all compensation due under the law, and are entitled to recovery of such amounts, liquidated damages, prejudgment interest, and attorneys' fees and costs, pursuant to N.C. Gen. Stat. §§ 95-25.13, 95-25.6, 95-25.22(a), (a1), and (d).

27

114.    Additionally, under the NCWHA, N.C. Gen. Stat. §§ 95-25.6, 95-25.7, and 95-25.12, Defendant was obligated to compensate Plaintiff for his accrued vacation and sick earnings as of the date of his wrongful termination, in light of Defendant's silence on any potential PTO forfeiture. Defendant has failed to compensate these earnings.

115.    Defendant intentionally refused to pay all wages due as set forth in the preceding paragraphs of this Complaint to Plaintiff in violation of the NCWHA.

**COUNT THREE**
**Retaliation in Violation of the FLSA**
**29 U.S.C. § 215(a)(3)**

116.    Plaintiff incorporates by reference all preceding paragraphs as if the same were repeated here verbatim.

117.    The FLSA prohibits any person (or employer) from discharging or in any other manner discriminating against any employee because such employee has filed any complaint or instituted any proceeding or investigation into rights protected by the FLSA. *See* 29 U.S.C. § 215(a)(3).

118.    Plaintiff repeatedly reported Defendant's compensation practices, including Defendant's failure to compensate Plaintiff for all hours worked at the appropriate hourly rates, including overtime rates, on behalf of himself and other employees under his immediate supervision.

119.    Plaintiff, by initiating multiple lawful, good faith inquiries into Defendant's pay practices and requesting payroll documents evidencing the same, participated in a protected activity, pursuant to the FLSA, 29 U.S.C. § 215(a)(3).

28

120.     In order to further impede investigation into Defendant's compensation of Plaintiff and other employees, Defendant terminated Plaintiff.

121.     Defendant's action of termination Plaintiff was done willfully, maliciously, wantonly, or in reckless disregard for Plaintiff's rights under the FLSA.

122.     Plaintiff is entitled to lost wages and benefits, as well as liquidated, compensatory, and punitive damages.

## PRAYER FOR RELIEF

WHEREFORE, Named Plaintiff, on behalf of himself and all those similarly situated, prays that this Honorable Court:

1.     Issue an Order certifying this action as a collective action under the FLSA, and designate Named Plaintiff as representative of all those similarly situated under the FLSA collective action;

2.     Issue an Order certifying this action as a class action under the NCWHA, and designate Named Plaintiff as representative on behalf of all those similarly situated under the NCWHA class;

3.     Award Plaintiffs and all those similarly situated actual damages for all unpaid wages found due, and liquidated damages equal in amount, as provided by the FLSA, 29 U.S.C. § 216(b), and pursuant to the NCWHA, N.C. Gen. Stat. § 95-25.22(a1);

4.     Award Plaintiffs and all those similarly situated pre- and post-judgment interest at the statutory rate, as provided by the FLSA, 29 U.S.C. § 216(b), and pursuant to the NCWHA, N.C. Gen. Stat. § 95-25.22(a) as applicable;

5.     Award Plaintiffs and all those similarly situated attorney's fees, costs, and disbursements as provided by FLSA, 29 U.S.C. § 216(b), and pursuant to the NCWHA, N.C. Gen. Stat. § 95-25.22(d); and

6.     Award Named Plaintiff all wages, benefits, or other compensation denied to or lost by Plaintiff, and monetary losses sustained, as a result of Defendant Securitas's unlawful retaliation and resulting constructive discharge;

7.     Award Plaintiff's interest at the prevailing rate, as provided under 29 U.S.C. § 2617(a)(1)(A)(ii) and N.C. Gen. Stat. § 95-243(c);

8.     Award Plaintiffs all consequential damages due as a result of Defendant Securitas's unlawful acts;

9.     Award Plaintiffs punitive damages for Defendant Securitas's willful, wanton, and malicious conduct;

10.    Grant such further legal and equitable relief as the Court deems necessary and proper in the public interest.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff hereby demands a trial by jury on all issues so triable.

Respectfully submitted, November 27, 2024.

/s/ Gilda Adriana Hernandez
Gilda A. Hernandez (NCSB No. 36812)
Hannah B. Simmons (NCSB No. 59579)
Matthew S. Marlowe (NCSB No. 60035)
Briahna B. Koegel (NCSB No. 62491)
**THE LAW OFFICES OF GILDA A.**

**HERNANDEZ, PLLC**
1020 Southhill Drive, Ste. 130
Cary, NC 27513
Phone: (919) 741-8693
Fax: (919) 869-1853
ghernandez@gildahernandezlaw.com
hsimmons@gildahernandezlaw.com
mmarlowe@gildahernandezlaw.com
bkoegel@gildahernandezlaw.com

*Attorneys for Plaintiff*